IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MALIK HOOD                          :         CIVIL ACTION
                                    :
        v.                          :
                                    :
LOUIS FOLINO, et al.                :         No. 10-3985

**MEMORANDUM**

J. WILLIAM DITTER, JR., J.                          March 8, 2012

Presently before this court is a pro se petition for writ of habeas corpus filed

pursuant to 28 U.S.C. § 2254 by Malik Hood and the response thereto.  Hood, who is

currently incarcerated in the State Correctional Institution in Waynesburg, Pennsylvania,

challenges his incarceration for first degree murder and weapons violations.  For the

reasons that follow, the petition will be denied.

**FACTS AND PROCEDURAL HISTORY:**

The state court summarized the facts leading up to Hood's arrest as follows:

> On November 24, 1997, the victim, Anthony Taylor, was seen
> engaged in a heated argument with Hood standing outside of
> Taylor's residence at 229 Creighton Street.  The argument focused
> on Taylor's anger over Hood's use of Taylor's property as a
> headquarters for Hood's drug business.  At some point, Taylor
> entered a neighbor's house and called 911 because "there was going
> to be some trouble because the kids would not get out of his house."
> After calling the police, Taylor returned to the street and again
> argued with Hood outside his residence.  Hood pulled out a gun and
> fired it directly at Taylor, [fatally] wounding him in the heart, liver,
> leg and stomach.  The police immediately canvassed the
> neighborhood for witnesses but no one came forward.

In August 1999, the police decided to go to the home of each person who had called 911 on the night of the murder.  They located two eyewitnesses, Cuddlene Ross and Lisa Wragg.  Ms. Ross testified at trial that she saw Hood pull a gun from his waistband and gesture with it, and then she heard a shot and saw the victim fall.  She ran inside to call 911 and as she was dialing, she heard several more shots.  It is well founded in the evidence that although there were many witnesses to the shooting, very few were willing to come forward and cooperate with the police.  The cooperation of Cuddlene Ross, coupled with the understandable fear that ran through her neighborhood, was an admirable example of bravery and social consciousness.

Ms. Wragg, who lived nearby at the time of the shooting, initially told police that Hood was the man she saw shoot and kill Taylor, and she positively identified him by way of a photo array.  She also provided the police with a written statement in which she answered with the name "Malik" to the question "Do you know who shot and killed Anthony Taylor on 11/24/97?"  At trial, she testified that Taylor was shot by an unidentified individual in a car during a drive-by shooting, however, she acknowledged her earlier written and oral statements to the police, and gave no explanation for the inconsistencies with her trial testimony.  She also testified that her mother, Pauline Wragg, had made a telephone call to 911 from the house after the shooting.

During additional interviews with Ross and Wragg, the Commonwealth developed information to support a protective order to keep the identities of these witnesses, as well as their statements, from being disclosed prior to trial because the witnesses were fearful of retaliatory measures.  The Honorable Renee Cardwell Hughes granted the Commonwealth's motion for a protective order after an ex parte hearing on August 22, 2000.

Commonwealth v. Hood, 872 A.2d 175, 178-179 (Pa. Super. March 14, 2005) (citations omitted)

On November 4, 2002, a jury in the Court of Common Pleas of Philadelphia County found Hood guilty of first degree murder and firearms violations.  The Honorable James A. Lineberger sentenced Hood to life imprisonment on the murder charge and one

to two years consecutive sentences for each of the two weapons violations:

Hood filed a direct appeal arguing that:

1) he was deprived of the right to pretrial discovery and his right to counsel because the Commonwealth was permitted to conceal from his trial attorney the identity and statements of key Commonwealth witnesses and because trial counsel was precluded from participating in the hearing where the lower court ruled that this information would be kept from counsel until the time of trial;

2) the trial court erred in allowing the Commonwealth to present testimony regarding the content of police radio calls made to 911 by unidentified witnesses which incriminated Hood where there was no independent proof that these declarants actually witnessed the shooting; and

3) the trial court erred in refusing to grant relief due to prosecutorial misconduct where the cross-examination of a defense alibi witness revealed that Hood had been in prison subsequent to this offense but prior to his arrest.

The Pennsylvania Superior Court affirmed the judgment of sentence on March 14, 2005.

Commonwealth v. Hood, 872 A.2d 175 (Pa. Super. March 14, 2005).  The Pennsylvania

Supreme Court denied Hood's petition for allowance of appeal on October 27, 2005.

Commonwealth v. Hood, 889 A.2d 88 (Pa. Oct. 27, 2005).

On June 19, 2006, Hood filed a pro se petition in the state court under the Post

Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. § 9541, et seq.  Hood then retained

counsel who filed an amended petition claiming ineffective assistance of trial counsel for

failure to:

1) challenge the pretrial protective order for the three eyewitnesses;

2) request an extension of the one hour continuance to investigate the three

"surprise" witnesses;

3) investigate the crime scene to discredit the witnesses or find additional witnesses;

4) properly question the alibi witness;

5) object to the admission or request a mistrial after the admission of the 911 tapes; and

6) investigate or present the testimony of asserted eyewitness Kerper Yenglee.

The court denied Hood's PCRA petition on November 10, 2008. Petitioner raised one issue on appeal to the Superior Court, that trial counsel was ineffective for failing to investigate or present alleged eyewitness Kerper Yenglee. On August 26, 2009, the Superior Court affirmed the denial of the PCRA petition. Commonwealth v. Hood, 948 A.2d 1014, No. 2741 EDA 2008 (Pa. Super. Aug. 26, 2009) (unpublished memorandum). Hood's petition for allowance of appeal to the Supreme Court of Pennsylvania was denied on June 23, 2010. Commonwealth v. Hood, 997 A.2d 1175 (Pa. June 23, 2010).

Hood filed a petition for a federal writ of habeas corpus on July 31, 2010[1], claiming that:

---

[1]This court will presume that Hood's petition was given to prison authorities on the date on which it was signed, July 31, 2010, and his petition will be deemed filed as of that date. Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998) (citing Houston v. Lack, 487 U.S. 266 (1988) (a pro se petitioner's habeas petition is deemed filed at the moment he delivers it to prison authorities for mailing to the district court). Thus, he is within the one-year limitations period of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). 28 U.S.C. § 2244(d)(1)(A) (a petitioner must file a habeas petition within one year of the date on which the judgment of sentence becomes final by the conclusion of direct appeal or the expiration of time for seeking such review).

1) the trial court erred when it permitted the Commonwealth to conceal the identity and police statements of two eyewitnesses thereby abridging Petitioner's right to counsel throughout the entire proceeding;

2) the trial court erred in allowing the Commonwealth to present the content of incriminating 911 calls without any independent proof of the declarants who alleged to have witnessed the shooting;

3) the trial court erred in failing to call a mistrial due to prosecutorial misconduct when the prosecutor repeatedly questioned an alibi witness about Petitioner's prior incarceration and criminal activity;

4) ineffective assistance of trial counsel for failure to effectively challenge a protective order;

5) ineffective assistance of trial counsel due to counsel's failure to request a one hour continuance to investigate an alleged surprise witness, the witness's statements to police, and the alleged threats that led to the protective order;

6) ineffective assistance of trial counsel due to counsel's failure to investigate the crime scene;

7) ineffective assistance of trial counsel due to counsel eliciting character testimony from an alibi witness thereby opening the door to Petitioner's prior convictions;

8) ineffective assistance of trial counsel due to counsel's failure to request a mistrial after the Commonwealth's witness stated that she did not place a 911 call to the police; and

9) ineffective assistance of PCRA counsel due to counsel's failure to properly frame his claim of after discovered evidence offered by eyewitness Kerper Yenglee.

Respondents have filed an answer to Hood's habeas petition asserting that Hood is not entitled to federal habeas relief because his claims are procedurally defaulted, non-cognizable and meritless.

**DISCUSSION**:

    **A.**      **Standard of Review**

      Pursuant to 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petition for habeas corpus may only be granted if (1) the state court's adjudication of the claim resulted in a decision contrary to, or involved an unreasonable application of, "clearly established Federal law, as determined by the Supreme Court of the United States;" or if (2) the adjudication resulted in a decision that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). Factual issues determined by a state court are presumed to be correct and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. Werts v. Vaughn, 228 F.3d 178, 196 (3d Cir. 2000) (citing 28 U.S.C. § 2254(e)(1)).

    **B.**      **Unexhausted and Procedurally Defaulted Claims: Four, Five, Seven and Eight**

      A federal court, absent unusual circumstances, should not entertain a petition for writ of habeas corpus unless the petitioner has first satisfied the exhaustion requirement of 28 U.S.C. § 2254. "The exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see also Lines v. Larkins, 208 F.3d 153, 159 (3d Cir. 2000) (quoting Caswell v. Ryan, 953 F.2d 853, 856 (3d Cir. 1992)). A petitioner typically exhausts his federal claims by fairly

presenting each claim at each stage of the state's established review process.  Villot v.

Varner, 373 F.3d 327, 337 (3d Cir. 2004).  The habeas corpus petitioner has the burden of

proving exhaustion of all available state remedies.  Lambert v. Blackwell, 134 F.3d 506,

513 (3d Cir. 1997) (citing 28 U.S.C.A. § 2254).

Hood's three claims of ineffective assistance of trial counsel and one claim of trial

court error; claims four, five, seven and eight were not presented on direct appeal or

presented to the Superior Court on appeal from the denial of his PCRA petition, and as a

result, are unexhausted.  See Commonwealth v.Hood, 948 A.2d 1014, No. 2741 EDA

2008 (Aug. 26, 2009).  Even if I were to excuse exhaustion pursuant to 28 U.S.C.

§ 2254(b)(1), a return to state court would be futile due to "an absence of available State

corrective process."  Lines, 208 F.3d at 162.  The only way in which Hood could properly

present these claims in the state court at this time is by filing a second PCRA petition.

See Szuchon v. Lehman, 273 F.3d 299, 324 n.14 (3d Cir. 2001).  However, any such

petition would be time-barred by the PCRA's statute of limitations.[2]  Since the state's

procedural rules bar curing the exhaustion requirement, these claims are procedurally

---

[2]Pursuant to the amended PCRA, effective January 16, 1996, collateral actions must be filed within one (1) year of the date the conviction at issue becomes final. 42 Pa. Cons. Stat. Ann. § 9545(b)(1); see also, e.g., Lines, 208 F.3d at 164 n.17 (noting that the Pennsylvania Supreme Court has held that the time restrictions for seeking relief under the PCRA are jurisdictional) (citing Commonwealth v. Banks, 726 A.2d 374 (Pa. 1999)).  For purposes of the PCRA, a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of Pennsylvania and the Supreme Court of the United States, or at the expiration of time for seeking the review. 42 Pa. Cons. Stat. Ann. § 9545(b)(3).  Hood's conviction became final in 2005.

defaulted.

The principal exception to this general rule precluding federal review of habeas claims that have been procedurally defaulted is for petitioners who can show "cause and prejudice" for the procedural default or that a "miscarriage of justice" will occur absent review. Hubbard v. Pinchak, 378 F.3d 333, 338 (3d Cir. 2004). The Supreme Court has delineated what constitutes "cause" for the procedural default: the petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Werts, 228 F.3d at 192-193 (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)). With regard to the prejudice requirement, the habeas petitioner must prove "'not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" Id. at 193 (citing Carrier, 477 U.S. at 494). This standard essentially requires the petitioner to show he was denied "fundamental fairness" at trial. Id.

In the alternative, if the petitioner fails to demonstrate cause and prejudice for the default, the federal court may also consider a defaulted claim if the petitioner can demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. Coleman, 501 U.S. 722, 748 (1991). In order to satisfy the fundamental miscarriage of justice exception, the Supreme Court requires that the petitioner show that a "constitutional violation has probably resulted in the conviction of one who is actually

8

innocent." Schlup v. Delo, 513 U.S. 298, 327 (1995) (citing Carrier, 477 U.S. at 496).

To satisfy the "actual innocence" standard, a petitioner must show that, in light of new

evidence, it is more likely than not that no reasonable juror would have found him guilty

beyond a reasonable doubt. Schlup, 513 U.S. at 327.

Hood has not even attempted to provide this court with an explanation for his

failure to properly present these claims to the state courts.[3]  As a result, he has not shown

cause to excuse his procedural default.[4]  Carrier, 477 U.S. at 488.  Moreover, because

Hood makes no colorable showing of innocence, he has failed to demonstrate that a

miscarriage of justice will result if his claims are not reviewed.  Coleman, 501 U.S. at

748; Schlup, 513 U.S. at 327 (citing Carrier, 477 U.S. at 496).  Consequently, federal

review of these claims is foreclosed.

### C.     Exhausted Claims: One, Two, Three and Six

#### 1.     Claim One: Trial court error for permitting the Commonwealth to conceal the identity and police statements of two eyewitnesses

Hood asserts that the trial court violated his due process rights and right to counsel

---

[3]To the extent that Hood would argue that his default is due to counsel's failure to
properly present these claims on PCRA appeal, such a claim must fail.  The Supreme Court has
determined that any attorney error that has led to the default of a petitioner's claims in a collateral
or discretionary proceeding in state court cannot constitute cause to excuse his default in a
federal habeas petition.  See Coleman, 501 U.S. at 757; see also Pennsylvania v. Finley, 481 U.S.
551, 558 (1987) (Constitution does not dictate standard for attorney effectiveness in post-
conviction collateral attack).

[4]Because no cause has been demonstrated, the court need not address the prejudice
requirement.  Engle v. Isaac, 456 U.S. 107, 134 n.43 (1982) (because petitioner lacked cause for
default, the court need not consider whether he also suffered actual prejudice).

by concealing the identities of the Commonwealth's witnesses pursuant to a protective

order issued under Pa. R. Crim. P. 573(F).  This issue was thoroughly addressed by the

Superior Court on direct appeal:

> With respect to the discovery of eyewitnesses, there is no requirement that
> identifying information of eyewitnesses be disclosed by the Commonwealth under
> the mandatory disclosure provisions of Rule 573...
>
> Rule 573 allows a party to seek a protective order restricting the disclosure of
> certain information.  In this case, the Commonwealth appropriately filed for such a
> protective order, and following an ex parte hearing, the trial court granted the
> protective order...
>
> In the case sub judice, Hood argues that he was denied his right to counsel because
> the hearing for the protective order was done ex parte.  We note at the outset that
> allowing the presence of defendant and defense counsel at the protective order
> hearing would have defeated the purpose of providing protection for these
> witnesses.  Further, the subject of the hearing was collateral to the guilt or
> innocence of Hood as it involved only the question of whether these witnesses
> were fearful of Hood.
>
> A defendant has a right to counsel at every critical stage of a criminal proceeding
> where the substantive rights of the accused may be affected.  A criminal
> proceeding is critical when certain legal rights may be lost if not exercised at that
> stage.
>
> Hood lost no legal rights by not having the names of the witnesses disclosed to him
> during the discovery stage as he was afforded full confrontation with these
> witnesses at trial who were subjected to a full and vigorous cross-examination.
> Further, Hood was given all the time he requested to prepare for these witnesses.
> The ex parte hearing was therefore not a critical stage of the proceeding against
> Hood.

Commonwealth v. Hood, 872 A.2d 175, 179-180 (Pa. Super. March 14, 2005) (citations

omitted).

I conclude that the state courts' determination of this issue was reasonable and not

10

contrary to established law.  Pursuant to Pennsylvania law, Hood did not have a right to mandatory discovery of the protected witnesses identifying information or written statements.  See Pa.R.Crim.P. Rule 573, see also Commonwealth v. Brown, 676 A.2d 1178, 1185 (Pa. 1996).  Hood's assertion that the trial court's Rule 573(F) order denied his counsel time necessary to prepare to cross-examine the "surprise witnesses" is without merit, because the witnesses were extensively cross-examined.  See (N.T 10/28/2002, at 80-114; 121-122; 158-198); (N.T. 10/29/2002, at 35-46).  Moreover, Hood does not assert how earlier disclosure of the identities of the witnesses would have changed defense counsel's strategy.

In any event, trial court error requires reversal only if it had "substantial and injurious effect or influence in determining the jury's verdict."  See Bond v. Beard, 539 F.3d 256, 276 (3d Cir. 2011) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).  In the instant case, any potential prejudice created by the issuance of the protective order was cured by the witnesses subsequent live testimony and defense counsel's opportunity for extensive cross-examination.  As a result, any alleged trial court error was harmless.  Therefore, I conclude that Hood's claim is meritless.

### 2.    Claim Two: Trial court error for permitting the Commonwealth to present the content of incriminating 911 calls without any independent proof of the declarants who alleged to have witnessed the shooting

Hood next asserts that the trial court erred in permitting the Commonwealth to present the content of 911 calls without independent proof of the declarants who alleged

witnessing the shooting.  Hood's claim has two components: that the trial court erred by "abusing its discretion" and that the trial court violated his sixth amendment rights under Crawford v. Washington, 541 U.S. 36 (2004).

The first part of Hood's claim, that the trial court abused it's discretion for allowing the admission of the 911 tapes, is non-cognizable.  Hood challenges the Superior Court's interpretation of Pennsylvania's "present sense impression" exception to the hearsay rule.  Questions of state law can not be relitigated in a federal habeas proceeding. Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (citing Estelle v. McGuire, 502 U.S. 62, 67-8 (1991)).

The second component to Hood's claim is that the trial court's ruling violated his sixth amendment confrontation clause rights under Crawford.  Specifically, Hood asserts that under Crawford, 911 telephone calls are testimonial statements which are inadmissible absent a showing that the declarant is unavailable and the defendant had a prior opportunity for cross examination.

The Confrontation Clause provides a criminal defendant with the right "to be confronted with the witnesses against him."[5]  U.S. Const. amend VI.  The Supreme Court has recognized that the right of an accused to confront and cross-examine witnesses is essential to due process.  See Chambers v. Mississippi, 410 U.S. 284, 294 (1973).  In Crawford v. Washington, 541 U.S. 36 (2004), the Court held that the Confrontation

---

[5]The Supreme Court has held that this clause is a fundamental right "made obligatory on the states by the Fourteenth Amendment."  See Pointer v. Texas, 380 U.S. 400, 403 (1965).

Clause bars the "admission of *testimonial* statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination."[6] 541 U.S. at 53-54 (emphasis added).

At the outset, I note that the Pennsylvania Superior court deemed Hood's <u>Crawford</u> claim waived:

> Our review of the record reveals that Hood failed to object to the Commonwealth's introduction of the out-of-court statements as a violation of his right to confront his accusers. Accordingly, we find Hood has waived the issue for appellate review, and we therefore affirm the trial court's ruling that the 911 tapes were admissible. Hood has also waived this issue by failing to include it in his Statement of Questions Involved. "Ordinarily no point will be considered which is not set forth in the statement of questions involved or suggested thereby."

<u>Commonwealth v. Hood</u>, 872 A.2d 175, 184 (Pa. Super. 2005) (citations omitted). As a rule, a federal court may not entertain a state prisoner's habeas claims when a state court has declined to address those claims because the prisoner had failed to meet a state procedural requirement and the state judgment rests on independent and adequate state procedural grounds. <u>Walker v. Martin</u>, 131 S.Ct. 1120, 1127 (2011). Therefore, I am precluded from reviewing this claim absent a finding of cause and prejudice. <u>See Lines</u>, 208 F.3d at 166; <u>Carrier</u>, 477 U.S. at 478. Because Hood has established neither, his claim is denied.

In any event, Hood's claim also lacks merit. A 911 call is ordinarily not designed

---

[6]"[A]t a minimum, [the term 'testimonial' applies] to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." <u>Crawford</u>, 541 U.S. at 68.

primarily to establish or prove some past fact, but to describe current circumstances requiring police assistance.  Davis v. Washington, 547 U.S. 813, 827 (2006).  Therefore, statements describing an ongoing emergency, recorded during the course of a 911 call are generally not considered testimonial.  Id. The non testimonial statements in Davis can be distinguished from the testimonial statements in Crawford in that the statements were made as the event was actually happening, not after the fact; that there was an ongoing emergency and the elicited statements were necessary to resolve that emergency; and that the statements were not formal.  Michigan v. Bryant, 131 S.Ct 1143, 1154 (2011).

The statements made during the 911 calls and introduced at trial are not testimonial and therefore are not inadmissible hearsay under Crawford.  Id.  The statements were made while the shooting occurred, the emergency was ongoing, the elicited statements were necessary to resolve the emergency, and the statements were informal.  Id. Therefore, the trial court's ruling did not violate Hood's sixth amendment confrontation clause rights under Crawford and I conclude that this claim is meritless.

      **3.**    **Claim Three: Trial court error for failing to call a mistrial due to prosecutorial misconduct**

Hood next asserts that the trial court erred in failing to call a mistrial due to prosecutorial misconduct whereby the prosecutor repeatedly questioned the alibi witness, Heather Oliver, about Hood's prior incarceration and criminal activity.  The asserted misconduct occurred during this line of questioning:

**Commonwealth**: And he was with you all of that time from April of '99 until,

January the 6th, 2000?

**Heather Oliver**: Yes.

**Commonwealth**: And you lived together continuously; is that what you're telling this jury?

**Heather Oliver**: Yes.

**Commonwealth**: ....And you're absolutely sure of that?

**Heather Oliver**: That we lived together from '99 to 2000?

**Commonwealth**: Yeah.

**Heather Oliver**: Yes, sir.

**Commonwealth**: Okay.  And when was that, April of '99 to 2000?

**Heather Oliver**: Yes.

**Commonwealth**: Where was he during the other period of time in between the April of 2000 and – sorry, March '98 and April of '99.  That was it.

**Heather Oliver**:  He was living with his mother.

**Commonwealth**: And you would go visit him at his mother's house, or he would come visit you?

**Heather Oliver**: Yes, sir.

**Commonwealth**: And that was continuous, you said, right?

**Heather Oliver**: Yes.

**Commonwealth**: All right.  You've also, during at least '98 and at sometimes in '99, visited him up on State Road when he was in prison, right?

**Heather Oliver**: Yes.

15

**Commonwealth**: Oh, okay.  So you weren't living together all of that time with him and he wasn't with his mother or you all of that time, right?

(N.T. 10/30/2002, at 139-141).  Hood asserts that he was prejudiced by this line of questioning.

This claim was rejected as meritless by the Superior Court on direct appeal:

Evidence implying other crimes may be introduced when the evidence has a proper evidentiary purpose and is not used merely to demonstrate that the defendant is a person of bad character with a propensity to commit crime.  It is black letter law that the Commonwealth may impeach a defendant's credibility with reference to prior crimes where the defense opens the door.  The defendant is not insulated from being discredited about the factual accuracy simply because that proof involves other crimes.

In this case, the defense opened the door by putting Hood's girlfriend, Heather Oliver, on the stand as an alibi witness.  She testified Hood was with her the day of the shooting.  She further testified on direct that Hood lived with his mother during the period March 1998 to April 1999.  This line of cross-examination clearly attacked Oliver's credibility.  Therefore, it was permissible cross-examination.  It was permissible because it was not offered to show the bad character of Hood, but rather, to prove that the testimony of Oliver was not truthful.  It is well-established that admission of such evidence is within the sound discretion of the trial court and will be reversed only upon a showing of an abuse of that discretion.

Commonwealth v. Hood, 872 A.2d 175, 179-180 (Pa. Super. March 14, 2005) (citations omitted).

In order to prevail on his claim of trial court error, Hood must first demonstrate the existence of prosecutorial misconduct by showing that the Commonwealth's questions amounted to a constitutional violation because they were improper and so egregious that they rendered his entire trial fundamentally unfair.  See Darden v. Wainwright, 477 U.S. 168, 181 (1986); Fahy v. Horn, 516 F.3d 169, 198-99 (3d Cir. 2008).  However, Hood

16

cannot demonstrate that the Commonwealth's questions were improper.  As a matter of

Pennsylvania law, evidence of Hood's incarceration was admissible to challenge the

witness's credibility.  See Commonwealth v. Gwynn, 723 A.2d 143, 152 (Pa. 1998).

After the witness asserted that Hood resided with his mother from March 1998 through

April 1999, the Commonwealth sought to clarify the record and to demonstrate that the

witness's testimony was not entirely trustworthy.  See (N.T. 10/30/2002, at 139-141).  I

do not find the Commonwealth's questions unfairly prejudicial.  The Commonwealth

asked one direct question about Hood's incarceration and never asked why he had been

incarcerated.  See (N.T. 10/30/2002, at 140-141).  Further, any potential undue prejudice

was eliminated when the trial court instructed the jury not to use the fact of Hood's prior

incarceration as evidence of Hood's guilt in the instant case.  See (N.T. 10/31/2002 at

105-106);  Greer v. Miller, 483 U.S. 756, 767 (1987) (it is normally presumed that a jury

will follow the instructions of the court).  Given the trial judge's admonition to the jury to

view the Commonwealth's questions in proper perspective, I find no evidence to support

the argument that the jury would be unable to follow the court's instruction.  Upon

consideration of the foregoing, I conclude that the state courts' determination of this issue

was reasonable and not contrary to established law.  Consequently, Hood's claim is

denied as meritless.

> **4**.   **Claim Six: Ineffective assistance of trial counsel due to counsel's failure to investigate the crime scene**

In his next claim, Hood asserts that trial counsel's performance was ineffective due

17

to his failure to investigate the crime scene. [7]  Petitioner's claim of failure to investigate has two components: that counsel should have known that physical characteristics of the crime scene made Cuddlene Ross' testimony questionable; and that an eyewitness, Kerper Yenglee, existed who would have testified as to Hood's innocence.[8]  The first component of Hood's claim was not presented to the Superior Court on appeal from the denial of PCRA relief.  Therefore, this component of the claim is unexhausted and procedurally defaulted.  See discussion supra pp. 6-9.  The second component of Hood's claim dealing with Kerper Yenglee was properly exhausted and will be addressed on its merits.

Claims of ineffective assistance of counsel are governed by Strickland v. Washington, 466 U.S. 668 (1984).  In Strickland, the United States Supreme Court set forth the standard for a petitioner seeking habeas relief on the grounds of ineffective assistance of counsel:

First, the defendant must show that counsel's performance

---

[7]I note that Hood also states in the supporting facts section of his petition under ground six, that this "claim did not receive the appropriate review due to PCRA counsel's deficiency in framing the issue."  See Petition for Writ of Habeas Corpus at 9(c).  Claims of ineffective assistance of PCRA counsel are non-cognizable on habeas review.  See 28 U.S.C. § 2254(I) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under Section 2254"); Pennsylvania v. Finley, 481 U.S. 551, 558 (1987) (Constitution does not dictate standard for attorney effectiveness in post-conviction collateral attack).  Consequently, Hood cannot claim constitutionally ineffective assistance of PCRA counsel in habeas proceedings.

[8] In his counseled PCRA petition, Hood asserted both components of the instant claim as separate claims.  On appeal to the Superior Court from denial of PCRA relief, counsel asserted one claim that "counsel failed to investigate and/or present Kerper Yenglee as a witness."  Hood now merges these two claims as components of one claim, ineffective assistance of counsel due to failure to investigate the crime scene, in his pro se petition for writ of habeas corpus.

18

> was deficient.  This requires showing that counsel made errors
> so serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment.  Second,
> the defendant must show that the deficient performance
> prejudiced the defense.  This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair
> trial, a trial whose result is reliable.

Id. at 687.

Because "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable," a court must be "highly deferential" to counsel's performance and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 689.  In determining prejudice, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  Id. at 695.

"It is past question that the rule set forth in Strickland qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Williams, 529 U.S. at 391.  Thus, Hood is entitled to relief if the Pennsylvania courts' decision rejecting his claims of ineffective assistance of counsel was either "contrary to, or involved an unreasonable application of," that established law.  Id.; see also Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002); Bell v. Cone, 535 U.S. 685, 698-699 (2002) ("It is not enough to convince a federal habeas court that, in its independent judgment, the state–court decision applied Strickland incorrectly.")

This claim was rejected by the Superior Court upon denial of PCRA relief.  The

19

Superior Court determined:

> Yenglee, a fellow inmate of [Hood] who is also serving a life sentence for
> first degree murder, submitted an affidavit on August 20, 2007 alleging that
> he saw the victim killed in a drive-by shooting and that Appellant was not
> in the car.  Yenglee also alleged that after the shooting, a neighbor came out
> of his home and stated, "I think it was Malik or one of his homies."  [Hood]
> argues that Yenglee's testimony would have explained how others in the
> neighborhood came to assume he shot the victim, and would have changed
> the outcome of his trial.
>
> ****
>
> [Hood] fails to prove that trial counsel was informed of Yenglee's existence
> or that he should have otherwise known of Yenglee.  In neither his petition
> nor his appellate brief did [Hood] argue that he informed trial counsel of
> Yenglee's existence.  Yenglee's affidavit also did not indicate whether he
> attempted to contact trial counsel or [Hood] to establish his availability and
> willingness to testify.  Although Yenglee stated in his affidavit that he is
> willing to testify to "everything that is within this statement," neither he nor
> [Hood] showed that this was the situation during trial, and Yenglee failed to
> explain why he did not come forward at that time.  It is not clear that
> [Hood] even knew of the existence of Yenglee at the time.  Accordingly,
> [Hood's] claim is meritless because he failed to prove that counsel or
> should have known of Yenglee, and that Yenglee was willing and able to
> testify at trial.
>
> Moreover, the PCRA court stated that none of the witnesses to the shooting
> mentioned a vehicle.  The court concluded that the Commonwealth's
> evidence was "clearly more convincing" because multiple witnesses saw
> that the victim was arguing with [Hood] on the street when [Hood] drew his
> gun and shot him.

Commonwealth v. Hood, 948 A.2d 1014, No. 2741 EDA 2008 at 4-6 (Pa. Super. Aug. 26,

2009) (unpublished memorandum) (citations omitted).

In order for Hood to prevail on this Strickland claim, he must show that counsel's

performance was deficient.  In Strickland, the United States Supreme Court did not offer

any specific standards concerning the duty to investigate, but did rule that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691.  A decision not to investigate must be directly assessed for "reasonableness in all the circumstances;" this court must apply "a heavy measure of deference to counsel's judgments." Id.; Stevens v. Delaware Correctional Center, 295 F.3d 361, 370-371 (3d Cir. 2002).  Hood asserts that counsel failed to investigate, however, he does not offer any evidence to support this claim.  Hood *does* include as evidence two letters he received from trial counsel, in the first letter, trial counsel offers his assistance to PCRA counsel and in the second letter trial counsel explains that he "spent a great deal of time preparing [the] case for trial" and that he was unwilling to file an affidavit stating that he "didn't adequately prepare for trial." See Petitioner's Brief in Support of Habeas Corpus, Ex. B.  Clearly these letters do not offer any support for the claim that counsel failed to investigate.  Therefore, Hood fails to establish that counsel's performance was deficient under Strickland.

Further, the state court concluded that Yenglee's affidavit was simply not credible. As the PCRA found:

> According to the statement of Mr. Yenglee, he observed a light-colored car driving down the block, an unidentified man leaning out the window of the car and the man beginning to shoot.  According to Mr. Yenglee, [Hood] was not in the vehicle from which the gunfire was coming.  However, this very vague statement that was written over five years after [Hood] was convicted has no semblance of credibility when compared to the facts that were established at trial.  Not one witness mentioned a vehicle, the evidence presented by the Commonwealth showed that Mr. Taylor argued with [Hood] on the street, [Hood] pulled out a gun and shot Mr. Taylor in front

> of numerous witnesses.  These facts are clearly more convincing than
> [Hood's] belated attempt at establishing his innocence.

Commonwealth v. Hood, CP-51-CR-0303561-2000, No. 2741 EDA 2008 (Pa. Nov. 10,

2008).  The state court's factual determination that Yenglee's affidavit was not credible

was reasonable.  Accordingly, Hood cannot establish that he was prejudiced by counsel's

alleged ineffective assistance.  Therefore, Hood's claim is denied as meritless.

### D.    Non-Cognizable Claim: Nine

Hood's final claim is that PCRA counsel provided ineffective assistance due to his

failure to properly frame his PCRA claim of after discovered evidence which was offered

by eyewitness Kerper Yenglee.  As previously noted, supra, claims of ineffective

assistance of PCRA counsel are non-cognizable on habeas review.  See 28 U.S.C. §

2254(I) ("The ineffectiveness or incompetence of counsel during Federal or State

collateral post-conviction proceedings shall not be a ground for relief in a proceeding

arising under Section 2254"); Pennsylvania v. Finley, 481 U.S. 551, 558 (1987).

Consequently, Hood cannot claim constitutionally ineffective assistance of counsel in

such proceedings.  Therefore, federal review of this claim is foreclosed and Hood's claim

is denied.

## CONCLUSION:

After close and objective review of the arguments and evidence, I conclude that

Hood's petition for writ of habeas corpus is meritless.  Accordingly, Hood's petition will

be denied.

Similarly, because Hood's claims are both legally and factually meritless, there is no need to conduct an evidentiary hearing, as it would not change the outcome of this matter.  <u>See</u> 28 U.S.C. § 2254(e)(2); <u>see also</u> <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007) ("an evidentiary hearing is not required on issues that can be resolved by reference to the state court record") (citations omitted).

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MALIK HOOD                          :        CIVIL ACTION
                    Petitioner      :
          v.                        :
                                    :
LOUIS FOLINO, et al.                :
                    Respondents     :        No. 10-3985

## O R D E R

AND NOW, this    day of March, 2012, upon consideration of the Petition for

Writ of Habeas Corpus and the response thereto, it is hereby **ORDERED** that for the

reasons set forth above, the Petition is **DENIED WITH PREJUDICE AND WITHOUT**

**A HEARING.**

**IT IS FURTHER ORDERED** that no certificate of appealability will be issued

pursuant to 28 U.S.C. § 2253 because petitioner has failed to make a substantial showing

of denial of a constitutional right.

The Clerk of Court is hereby directed to mark this case closed.

                                    s/ J. William Ditter, Jr.
                                    J. WILLIAM DITTER, JR., J.